# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ABDELHALEEM ASHQAR, | ) |
| Petitioner, | ) |
| | ) Case No. 11 C 0569 |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Abdelhaleem Ashqar's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Ashqar's Section 2255 motion. Further, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## FACTUAL BACKGROUND

On August 19, 2004, a grand jury returned a second superseding indictment charging Ashqar with criminal contempt in violation of 18 U.S.C. § 401(3), obstruction of justice in violation of 18 U.S.C. § 1503, and a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). In 1989, Ashqar – a Palestinian national – entered the United States as a Ph.D. student in business administration at the University of Mississippi, where he graduated in 1997. At trial, the government presented evidence of Ashqar's involvement in Hamas, a designated foreign terrorist organization, including documents the FBI found in a search of Ashqar's Mississippi residence in 1993, wiretap intercepts, and fax communications.

Ashqar's obstruction of justice and criminal contempt charges stem from his refusal to

testify before a grand jury that was investigating the funding of Hamas. More specifically, in June 2003, a federal grand jury sitting in the United States District Court for the Northern District of Illinois subpoenaed Ashqar to testify as part of an investigation into Hamas and its possible violations of United States law. On June 25, 2003, Ashqar appeared before the grand jury, and, after being sworn in, the government informed him about the nature of the investigation, his rights under the Fifth and Sixth Amendments, and of the potential penalties for obstruction of justice and perjury. The government then asked Ashqar a series of questions in reference to the grand jury investigation, but Ashqar refused to answer questions relating to Hamas. Instead, Ashqar read from a prepared statement giving his reasons for refusing to testify, including that he believed that answering the questions would violate his religious, political, and personal beliefs; the Israeli government would use his statements to persecute and torture him; and that his answers would be used against his friends and relatives, among other reasons. Ashqar further stated to the grand jury: "I will never give evidence or cooperate in any way with the grand jury or any other, no matter what the consequences to me."

After Ashqar refused to answer the government's questions, the grand jury temporarily adjourned. Ashqar and his attorney then appeared before Judge Charles Kocoras, who was Chief Judge of the Northern District of Illinois at that time. Upon the government's application, Chief Judge Kocoras granted Ashqar immunity for any truthful statements he made before the grand jury and ordered Ashqar to answer the questions. The government also offered to place Ashqar and his family under the United States Federal Witness Protection Program. Nonetheless, Ashqar continued to refuse to answer any questions. The government then warned Ashqar that it could prosecute him for criminal contempt and obstruction of justice. Ashqar responded by re-

reading his prepared statement. Subsequently, Chief Judge Kocoras held Ashqar in civil contempt.

The August 19, 2004 superseding indictment not only charged Ashqar with criminal contempt and obstruction of justice, but also with a racketeering conspiracy with co-defendants Mousa Abu Marzook ("Marzook") and Muhammad Salah ("Salah"). Ashqar's and Salah's trial began on October 12, 2006 and concluded on February 1, 2007.[1] On February 1, 2007, the jury convicted Ashqar of the criminal contempt and obstruction of justice charges, but acquitted him of the racketeering conspiracy charge. On November 21, 2007, the Court sentenced Ashqar to 135 months imprisonment for the criminal contempt conviction and a concurrent term of 120 months imprisonment for the obstruction of justice conviction. Ashqar appealed and the Seventh Circuit affirmed his conviction and sentenced on October 2, 2009. *See United States v. Ashqar,* 582 F.3d 819 (7th Cir. 2009). The United States Supreme Court denied Ashqar's petition for a writ of certiorari on March 1, 2010 and Ashqar filed the present Section 2255 motion on January 26, 2011.

**LEGAL STANDARD**

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Under Section 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545

---

[1] Marzook remains a fugitive and has yet to stand trial on the charges against him.

F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). A Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (a Section 2255 motion is "neither a recapitulation of nor a substitute for direct appeal"). As such, if a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal. *See Sandoval v. United States*, 574 F.3d 847, 850-51 (7th Cir. 2009); *Torzala,* 545 F.3d at 522. Because ineffective assistance of counsel claims usually involve evidence outside of the trial record, such claims may be brought for the first time in a Section 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

## ANALYSIS

In his Section 2255 motion, Ashqar, who is represented by counsel, argues that his defense counsel, William Moffitt, was suffering from kidney failure during the trial and appeal of his case and that had he known about Moffitt's kidney disease and the attendant dialysis treatment, he would have retained another lawyer to represent him.[2] Ashqar admits, however, that such a serious medical condition, standing alone, does not establish ineffective assistance of counsel, but instead provides context to his claims. *See Sanders v. United States,* 288 Fed.Appx. 283, 287, 2008 WL 2821588, at *3 (7th Cir. 2008) ("Outside influences such as serious illness or use of medication might *explain* a deficiency, but they do not constitute deficiencies by themselves.") (emphasis in original). Ashqar brings both ineffective assistance of trial and

---

[2] Moffitt passed away in April 2009.

4

appellate counsel claims based on Moffitt's representation, although other attorneys represented Ashqar during his criminal proceedings, including Keith Spielfogel, who was present throughout Ashqar's three-month trial and filed numerous motions and legal memoranda on behalf of Ashqar.

I.      **Ineffective Assistance of Trial Counsel**

Ashqar first argues that his trial counsel failed to provide effective assistance of counsel under the Sixth Amendment. To establish constitutionally ineffective assistance of counsel, Ashqar must establish that (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different" meaning "a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court's "review of the attorney's performance is 'highly deferential' and reflects 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Koons v. United States,* 639 F.3d 348, 351 (7th Cir. 2011) (citation omitted). Courts "assess counsel's work as a whole, and 'it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief.'" *See Brown v. Finnan,* 598 F.3d 416, 422 (7th Cir. 2010) (citation omitted). Meanwhile, if Ashqar fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant"); *George v. Smith,* 586 F.3d 479, 485-86 (7th Cir. 2009) ("If a defendant is unable to

*make a sufficient showing* on either component of the *Strickland* standard, we need not consider the other component." ) (emphasis in original).

A. **Obstruction of Justice and Criminal Contempt Charges**

The Court first notes that trial counsel successfully defended Ashqar against the most serious charge of the second superseding indictment – the racketeering conspiracy charge brought pursuant to 18 U.S.C. § 1962(d). Nevertheless, Ashqar argues that his trial counsel was constitutionally ineffective by failing to present evidence supporting his coercion defense to his obstruction of justice and criminal contempt charges. Even assuming that trial counsel's performance was constitutionally ineffective (which it was not), Ashqar has not established the prejudice prong under the *Strickland* standard, namely, but for counsel's errors the result of his trial would have been different. *See United States v. Taylor,* 569 F.3d 742, 748 (7th Cir. 2009) ("Courts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question of counsel's actual performance."). Specifically, the totality of the evidence of Ashqar's guilt as to the contempt and obstruction of justice charges was so overwhelming, Ashqar cannot establish that counsel's performance prejudiced him. *See Brown*, 598 F.3d at 424 (fact that evidence of defendant's guilt was overwhelming militates against a finding that introduction of disputed evidence affected jury's verdict); *Eckstein v. Kingston,* 460 F.3d 844, 848 (7th Cir. 2006) ("verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record.").

At trial, the Court admitted into evidence the transcript of Ashqar's June 25, 2003 appearance before the grand jury. This transcript establishes that the government informed

Ashqar of the nature of the grand jury investigation, of his Fifth and Sixth Amendment rights, and that the government would place Ashqar and his family in the United States Federal Witness Protection Program. The government also told Ashqar that the grand jury proceedings were secret and disclosure of any information was limited without court authorization. Further, the government advised him that his refusal to answer questions was obstructing the grand jury's investigation and was in violation of Chief Judge Kocoras' order. Nonetheless, Ashqar refused to answer substantive questions about Hamas, but instead, read from a prepared statement as follows:

> I respectfully refuse to answer any question put to me other than my name, address and occupation on several grounds. Most important, to do so would violate my long-held and unshakable religious, political and personal beliefs.
>
> Second. An answer I might provide could, and would, be given to Israel and would be used by Israel against me in an unfair, illegal and politically motivated prosecution for my beliefs and associations and religion.
>
> Third. Having been tortured by Israel for my beliefs, associations, and religion, any answer I might provide could, and would, be given to Israel which would once again torture me as a result of such answers.
>
> Fourth. I have been for years the subject of wide-spread electronic surveillance which is illegal and being used by the government through this grand jury to prepare for and to question me.
>
> Approximately five years ago, I was subpoenaed to appear before a grand jury in New York regarding what I believe to be the same subject matter as this. At that time I refused to testify and I was held in contempt and jailed for six months. I began a hunger strike as soon as I was jailed and maintained that strike until my release, leaving me with permanent medical problems. It is not my intention to obstruct justice or to interfere with any matters under consideration by this grand jury.
>
> As I said, I cannot answer any question today, just as I refused to do so five years ago. For the reasons I have set forth, I cannot and will not permit my answers to be used against my friends, relatives, and colleagues who have committed no crimes or wrongs but are being singled out for their involvement in

> the struggle for our political legitimate rights as recognized under international law. I would rather die than betray my beliefs and commitment to freedom, justice, and democracy for Palestine and Palestinians who have been homeless for more than 50 years.
>
> I will never give evidence or cooperate in any way with the grand jury or any other, no matter what the consequences to me.

(R. 15, Gov't Ex. 2, Tr. at 14-16.) Ashqar repeated or referenced his prepared statement approximately 70 times during his appearance in front of the grand jury in June 2003. (*Id*. at 17-62.)

Ashqar's recitation of his prepared statement – after the government's various warnings – and conduct at the June 2003 grand jury hearing amounted to an admission to the contempt and obstruction of charges against him. Specifically, his conduct constituted knowingly and willfully disregarding Chief Judge Kocoras' order and established that he acted knowingly and wrongfully in impeding the grand jury investigation. *See United States v. Macari,* 453 F.3d 926, 936 (7th Cir. 2006); *United States v. Hoover,* 240 F.3d 593, 596 (7th Cir. 2001). Moreover, other trial evidence supports Ashqar's contempt and obstruction convictions, including the credible testimony of FBI Special Agent David Bray, who testified that he was involved in investigating a Hamas conspiracy in the United States and that Ashqar's appearance before the grand jury was important to this on-going investigation. Agent Bray further testified to the specific circumstances surrounding Ashqar's June 2003 grand jury testimony. The government also introduced evidence of Ashqar's previous refusal to testify before a federal grand jury in the Southern District of New York that was investigating the funding of Hamas, including the testimony of a former prosecutor who explained the 1995 investigation into Marzook and Ashqar. Also, the government submitted into evidence the February 1998 transcript of Ashqar's

8

refusual to testify before the grand jury in the Southern District of New York.

Despite this overwhelming evidence of Ashqar's guilt, he now argues that trial counsel failed to develop his defense of coercion to his criminal contempt and obstruction charges. Under the defense of coercion, Ashqar was required to "show that he reasonably feared immediate death or serious bodily harm unless he committed the criminal act with which he was charged, and that there was no reasonable opportunity to refuse to commit the offense and to avoid the threatened injury." *See United States v. Jocic,* 207 F.3d 889, 892 (7th Cir. 2000); *see also United States v Lewis,* 641 F.3d 773, 782 (7th Cir. 2011). Even if there was evidence in the record that the FBI and/or an Assistant United States Attorney in Mississippi threatened Ashqar with deportation or money laundering charges as Ashqar suggests, the Court would be hard-pressed to conclude that this alleged conduct shows Ashqar reasonably feared immediate death or serious bodily harm because there was no evidence that "the threatened harm was present, immediate, and pending." *Jocic,* 207 F.3d at 892; *see also United States v. Sawyer,* 558 F.3d 705, 711 (7th Cir. 2009). Further, Ashqar does not sufficiently explain how his fear of persecution and harm by the Israeli government was "immediate" under Seventh Circuit case law. Finally, the government provided Ashqar with the opportunity to be placed in the United States Federal Witness Protection Program, which gave Ashqar a reasonable opportunity not to act in contempt or to obstruct justice, and thus avoid the threatened injury, yet he rejected this offer. *See Jocic,* 207 F.3d at 892. Because Ashqar cannot establish the defense of coercion based on the facts of this case, he has not overcome the presumption that his counsel's failure to develop this defense during trial might be considered sound trial strategy. *See Koons,* 639 F.3d at 351.

**B.     Sentencing**

Next, Ashqar argues that trial counsel failed to provide effective assistance of counsel at sentencing. First, Ashqar avers that his counsel refused to allow him to answer questions at his meeting with the probation office and failed to make good on his promise to provide answers in writing. (R. 1-1, Ashqar Aff. ¶ 9.) Ashqar, however, never explains what information or answers counsel failed to provide. *See Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006) (petitioner must "provide *some evidence* beyond conclusory and speculative allegations" in support of his Section 2255 motion) (emphasis in original). Meanwhile, despite Ashqar's averments, the record shows that defense counsel provided probation with a detailed version of the offense that fully explains the nature and circumstances of the offenses and Ashqar's history, including his family's history in Palestine. (R. 15, Gov't Ex. 11, Version of Offense.)

Ashqar also maintains that counsel failed to focus on the proper arguments when challenging the Presentence Investigation Report. Prior to sentencing, counsel filed a 161-page memorandum objecting to the Presentence Investigation Report and a significant portion of counsel's memorandum challenged the application of the terrorism offense level enhancement under the Sentencing Guidelines. In addition, the Court heard oral argument from counsel at the sentencing hearing. Moreover, at his sentencing hearing, the Court provided Ashqar with the opportunity to address any insufficiencies, objections, or corrections to the Presentence Investigation Report and Ashqar answered that he had no objections or corrections. (R. 15, Gov't Ex. 13, Sent. Tr. at 218.) Therefore, under the circumstances, Ashqar has failed to establish that counsel's performance – in relation to the Presentence Investigation Report and the interactions with the probation office – was constitutionally deficient. Furthermore, Ashqar fails

to establish that he was prejudiced by counsel's conduct because he does not explain how these alleged errors affected his sentence. *See Allen v. United States,* 175 F.3d 560, 563 (7th Cir. 1999) ("Only a significant increase in the sentence, attributable to counsel's error, constitutes prejudice.").

In addition, Ashqar contends that his trial counsel failed to properly prepare him for his allocution at sentencing. In particular, Ashqar avers that counsel never prepared him to speak at sentencing and never admonished him not to make any political statements as they could negatively affect his sentence. (*See* Ashqar Aff. ¶ 10.) In his Section 2255 motion, Ashqar also argues that counsel did not explain that failing to express remorse could negatively affect his sentence – a proposition not supported by evidence. *See Kafo,* 467 F.3d at 1068. In any event, Ashqar cannot establish that he was prejudiced by counsel's alleged conduct because although the advisory sentencing guideline range was 210 to 262 months, the Court sentenced him to 135 months to run concurrently with his 120 month sentence, which was well below the sentencing guideline range. *See Allen,* 175 F.3d at 563.

On a final note, at the conclusion of his allocution, Ashqar stated: " I forgot to thank my counsels, my legal counsel Bill Moffitt, his wife Edna Moffit, for working hard on my case, for their help and understanding, and more importantly, believing in me." (R. 15, Ex. 13 Sent. Tr., at 339.) Ashqar also thanked the other attorneys who represented him. In sum, after reviewing Ashqar's Section 2255 arguments, the record before the Court, and the Court's observations during trial and sentencing, Ashqar has failed to establish that Moffit and his colleagues provided ineffective assistance of trial counsel.

## II. Ineffective Assistance of Appellate Counsel

Ashqar also argues that his appellate counsel provided constitutionally ineffective assistance of counsel. Specifically, Ashqar argues that his appellate counsel, namely, William Moffitt, failed to raise the issue of Ashqar's good faith fear of persecution by Israel or misconduct by the FBI prior to his grand jury refusal to testify. As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland* to evaluate the effectiveness of appellate counsel. *See Suggs v. United States,* 513 F.3d 675, 678 (7th Cir. 2008). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel raised on appeal. *See id.*; *see also Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010). To establish the *Strickland* prejudice prong, Ashqar must show that "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Brown,* 598 F.3d at 425; *see also Suggs,* 513 F.3d at 678.

On appeal, Moffit's comprehensive legal memoranda focused on the Court's application of the terrorism enhancement under U.S.S.G. § 3A1.4, as did his April 7, 2009 oral argument.[3] To clarify, at sentencing, the Court concluded that the government had met its burden of proving by a preponderance of the evidence that Ashqar intended to obstruct a terrorism investigation into Hamas activities. The application of Section 3A1.4 resulted in the sentencing guideline

---

[3] At the April 7, 2009 oral argument, Moffitt not only sufficiently presented the arguments made in the appellate legal memoranda, he also adequately fielded questions from the panel. *See* http://www.ca7.uscourts.gov/tmp/BM0RHLQI.mp3. As such, Ashqar's argument that Moffit was unable to make a cogent and clear presentation at oral argument is without a factual basis.

12

range for one of his counts to increase from 24 to 30 months to 210 to 262 months. Because Ashqar was acquitted of the racketeering conspiracy charge under 18 U.S.C. § 1962(d), appellate counsel's focus on the terrorism enhancement was the most significant appellate argument remaining due to the sentence exposure Ashqar faced as result of its application. Therefore, the issues of Ashqar's good faith fear of persecution by Israel or misconduct by the FBI are not obvious and clearly stronger appellate arguments than the terrorism enhancement argument, especially in light of the Court's discussion of Ashqar's coercion defense above. *See Whitehead v. Cowan,* 263 F.3d 708, 731 (7th Cir. 2001) ("[a]ppellate lawyers are clearly not incompetent when they refuse to follow a 'kitchen sink' approach to the issues on appeals.") (citation omitted); *see also Martin v. Evans,* 384 F.3d 848, 852 (7th Cir. 2004) ("counsel is not required to raise every non-frivolous issue on appeal"). Moreover, as the Supreme Court teaches, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Accordingly, Ashqar has failed to establish that his appellate counsel's performance was constitutionally deficient under the first *Strickland* requirement. *See Taylor,* 569 F.3d at 748 ("*Strickland's* two-part test requires *both* deficient performance *and* prejudice") (emphasis in original).

Last, the Court denies Ashqar's request for an evidentiary hearing because district courts "need not hold an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Hutchings v. United States,* 618 F.3d 693, 699 (7th Cir. 2010); 28 U.S.C. § 2255(b). As discussed in detail above, the record in this

matter conclusively establishes that Ashqar is not entitled to relief under Section 2255.

### III. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Ashqar a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have an absolute right to appeal a district court's denial of a Section 2255 motion; instead, he must first request a certificate of appealability ("COA"). *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); 28 U.S.C. § 2253(b). Ashqar is entitled to a COA only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). Under this standard, Ashqar must demonstrate that reasonable jurists would find the Court's assessment of his Section 2255 claims debatable or wrong. *See Miller-El,* 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Here, the Court can find no reason why reasonable jurists would debate or disagree that Ashqar's trial and appellate counsel provided effective assistance of counsel under *Strickland.* Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Further, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** September 29, 2011

                **ENTERED**

                _____
                **AMY J. ST. EVE**
                **United States District Court Judge**